UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| KAY C. CIRLOT, PERSONAL REPRESENTATIVE OF THE ESTATE OF IVY CLIFF BAXLEY C. WELDON, DECEASED, | ) ) ) ) ) |
| Plaintiff | ) ) Case No. 4:09-cv-01771-HGD |
| vs. | ) ) ) |
| WAFFLE HOUSE, INC., | ) ) |
| Defendant | ) |

**MEMORANDUM OPINION**

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant. (Doc. 30). The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c), Rule 73, Fed.R.Civ.P., and LR 73.2.

Plaintiff, Kay Cirlot, is the daughter of Ivy Cliff Baxley Weldon, and the personal representative of the Estate of Ivy Cliff Baxley Weldon. Plaintiff is suing defendant, Waffle House, for the death of Ms. Weldon on June 12, 2007. In her complaint, plaintiff alleges claims of negligence and wantonness arising out of Ms. Weldon's fall on June 6, 2007, at a Waffle House Restaurant located in Pell City,

Alabama. However, plaintiff subsequently withdrew her claim of wantonness and proceeds only on a claim of negligence. (*See* Doc. 44, Plaintiff's Memorandum Brief in Response to Defendant's Motion for Summary Judgment, at 2).

Defendant has filed a Motion for Summary Judgment (Doc. 30) and a brief in support of that motion. (Doc. 31). Plaintiff has filed a brief in opposition to this motion. (Doc. 44). Both parties have submitted evidentiary submissions. Defendant also has filed a Motion to Strike the testimony of defendant's expert, Robert Tolbert, (Doc. 49) to which plaintiff has responded. (Doc. 51). These matters are now ready for disposition.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) (Dec. 2010). The recently amended Rule 56(c) provides:

> (1) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c) (Dec. 2010). Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). A genuine issue of material fact is shown when the nonmoving party produces evidence so that a reasonable factfinder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which

she has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Tipton v. Bergrohr GMBH–Siegen*, 965 F .2d 994, 998-99 (11th Cir. 1992), (internal citations and quotations omitted). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the nonmoving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## FACTUAL BACKGROUND

Most of the facts are not in dispute. (*See* Doc. 44, Plaintiff's Memorandum Brief in Response to Defendant's Motion for Summary Judgment, at 5) (plaintiff concurs in defendant's statement of facts as to paragraphs 1-13 and 27-29 of Defendant Waffle House, Inc.'s Brief in Support of Summary Judgment at 4-9).

In pertinent part, the undisputed facts reflect that on June 6, 2007, plaintiff drove Ms. Weldon, her 90-year-old mother, to a Waffle House Restaurant in Pell

City, Alabama, to have lunch. The day was sunny and hot. Plaintiff parked her car in the parking lot directly across from the front door. She and Ms. Weldon walked in a straight line across the parking lot to the front door. There is a curb that separates the parking lot from the sidewalk area that runs across the entire front of the restaurant. After walking across the lot, plaintiff and Ms. Weldon both stepped over the sidewalk curb and onto the sidewalk directly in front of the front door. Plaintiff opened the front door and held the door for Ms. Weldon.

After plaintiff opened the front door, someone inside the restaurant was coming out the door, and plaintiff and Ms. Weldon both backed up to avoid him. According to plaintiff, at this time, Ms. Weldon fell off the curb. Plaintiff did not see whether Ms. Weldon looked down before she stepped backward because she was holding the door for Ms. Weldon at the time she fell.

Plaintiff further testified:

I was turned sideways, because I had opened the door for mother to walk under my arm to go in . . . . So, when I stepped back to avoid the man, I was still on the sidewalk because I was turned sideways, but mother—you know, that door you go straight into the Waffle House, you don't turn in any way, and mother just backed up to avoid him, and that's when she stepped off the curb or fell off the curb or whatever.

(Plaintiff's Depo. at 51).

According to plaintiff, her mother walked backward, still facing the front door at the time she fell. Plaintiff did not see Ms. Weldon fall. She "felt her move" and

looked around. When she looked around, Ms. Weldon was already on the ground. It was only "a second or two" between the time when Ms. Weldon stepped onto the sidewalk and when she fell.

Ms. Weldon suffered head injuries as a result of her fall and died six days later, on June 12, 2007. While there is some evidence in the record that Ms. Weldon had been fitted with and advised to walk in a foot brace, which she refused to do, and that she suffered from dizzy spells and had other falls prior to this incident, plaintiff disputes that they contributed to her fall in this instance. For purposes of summary judgment, it is presumed that they did not.

This particular Waffle House, known as Unit 812, was built beginning in 1991, with construction complete on January 6, 1992. Since the construction of Unit 812, there have been no changes made to the slope, grading, or height of the sidewalk or curb in front of the front door to Unit 812.

In addition to the above undisputed facts, plaintiff's expert, Robert Tolbert, asserts that Ms. Weldon's fall was the result of Waffle House's failure to maintain the premises in a condition that complies with local and international codes, standards and/or statutes and industry standards. (Tolbert Depo. at 82-83). The Waffle House Restaurant has a door which opens directly out over the sidewalk in front of it. Patrons walk straight into and straight out of the restaurant through this door. In front

of the door is a sidewalk which runs approximately 30 feet from the area of the door to a handicap ramp at the far end. According to plaintiff's expert, the Americans with Disabilities Act (ADA) requires that handicap ramps have "landings" at the top and bottom of each ramp and immediately outside the door to establishments, such as restaurants. In the case of the Waffle House Restaurant in Pell City, the sidewalk served as the "landing" for the top of the ramp as well as for the entrance door to the restaurant, some 30 feet away. The ADA requires that landings be at least 60 inches long and as wide as the ramp leading to it. Furthermore, the ADA requires that landings with drop-offs have curbs, walls, railings or projecting surfaces that prevent people from slipping off the ramp. The ADA requires that, if curbs are used, they be a minimum of two inches high. (*See id*. at 67-68). Although the ADA section cited by Tolbert states that the purpose of the landing is to keep people from slipping off the *ramp*, Tolbert testified that, because the entire 30 feet of sidewalk was, in effect, a landing for the ramp, if a railing were utilized to prevent people from falling off the ramp, it should have extended from the ramp to the front door of the restaurant 30 feet away. (*Id*. at 70). According to Tolbert, the best barrier would have been a railing, stating that "had there been a railing there, [Ivy Weldon] could not have fallen out into the parking lot." (*Id*. at 92). In addition to this, Tolbert testified that the cross-slope of the sidewalk, according to the ADA, cannot be more than one inch for every

50 inches of sidewalk (a 1:50 slope). The sidewalk in front of the Waffle House had a slope of slightly over 1.5 inches (a 1.5:50 slope). In other words, the sidewalk sloped an extra ½ inch over 50 feet beyond that mandated by the ADA. Tolbert concluded that the cause of the accident was related to the cross slope and edge protection violations of the ADA.

However, regulations interpreting the ADA, referred to as the ADAAG, only require compliance by premises owners of buildings which were permitted on or after January 26, 1992, or buildings with certificates of occupancy on or after January 26, 1993. 28 C.F.R. §§ 36.401, 36.406; *see also Pascuiti v. New York Yankees*, 87 F.Supp.2d 221, 226 (S.D.N.Y. 1999). It is undisputed that construction was completed on the restaurant in question on January 6, 1992. (Lee Depo. at 31). Thus, it was not legally required to comply with these provisions.

## DISCUSSION

To recover in a premises-liability action based on a fall, a plaintiff must prove (1) that her fall was caused by a defect or instrumentality located on the defendant's premises, (2) that the fall was the result of the defendant's negligence, and (3) that the defendant had or should have had notice of the defect or instrumentality before the accident. *Logan v. Winn-Dixie Atlanta, Inc.*, 594 So.2d 83, 84 (Ala. 1992). Plaintiff

and Ms. Weldon were invitees of Waffle House. Waffle House owed a duty to them to "use reasonable care and diligence to keep the premises in a safe condition or, if the premises were in a dangerous condition, to give sufficient warning so that an invitee might avoid danger by the use of ordinary care." *Boudousquie v. Marriott Mgmt. Servs. Corp.*, 669 So.2d 998, 1000 (Ala.Civ.App. 1995). Waffle House's duty to warn is limited to hidden defects that are unknown to the invitee and that would not be discovered by him or her in the exercise of ordinary care. *Ex parte Mountain Top Indoor Flea Mkt., Inc.*, 699 So.2d 158, 161 (Ala. 1997). The owner of the premises is not an insurer of the safety of the invitee, and no presumption of negligence arises out of the mere fact of an injury to the invitee. *Id.*; *see also Tice v. Tice*, 361 So.2d 1051, 1052 (Ala. 1978).

The premises owner has no duty to warn the invitee of open and obvious defects in the premises, of which the invitee is aware or should be aware through the exercise of reasonable care. *Id.*; *see also Quillen v. Quillen*, 388 So.2d 985, 989 (Ala. 1980). A condition is "obvious" if the risk is apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee. *See Hartzog v. Compass Bank*, 686 So.2d 325 (Ala.Civ.App. 1996); *Hines v. Hardy*, 567 So.2d 1283, 1284 (Ala. 1990). The question of the openness and obviousness of a danger is generally not to be resolved on a motion for a summary judgment, *see Harris v.*

*Flagstar Enters., Inc.*, 685 So.2d 760, 762-23 (Ala.Civ.App. 1996); *Harding v. Pierce Hardy Real Estate*, 628 So.2d 461, 463 (Ala. 1993), except where all reasonable persons would draw the same conclusion, in which case it is a question of law for the trial judge.  See *Graham v. Wal-Mart Stores, Inc.*, 529 So.2d 938, 939 (Ala. 1988).

In a premises-liability setting, an objective standard is used to assess whether a hazard is open and obvious.  The question is whether the danger should have been observed, not whether in fact it was consciously appreciated:

> [I]n order for a defendant-invitor in a premises-liability case to win a summary judgment or a judgment as a matter of law grounded on the absence of a duty on the invitor to eliminate open and obvious hazards or to warn the invitee about them, the record need not contain undisputed evidence that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap.  While *Breeden [v. Hardy Corp.*, 562 So.2d 159 (Ala.1990)], does recite that "[a]ll ordinary risks present are assumed by the invitee," 562 So.2d at 160, this recitation cannot mean that the invitor's duty before a mishap is determined by the invitee's subjective state of mind at the moment of the mishap.  This Court has expressly rejected the notion that an invitor owes a duty to eliminate open and obvious hazards or to warn the invitee about them if the invitor "*should anticipate the harm despite such knowledge or obviousness*." *Ex parte Gold Kist, Inc.*, 686 So.2d 260, 261 (Ala. 1996)
>  . . . .

*Sessions v. Nonnemann*, 842 So.2d 649, 653-54 (Ala. 2002) (some emphasis added).

Thus, regardless of whether the sidewalk in front of Waffle House was constructed in a manner consistent with the ADA, if the hazard created by this non-compliance is open and obvious, the premises owner cannot be held liable for the

resulting injuries. Furthermore, the open and obvious hazard in this case was the height differential from the parking lot to the sidewalk in front of the door to the Waffle House. The difference in height is clearly visible to anyone walking across the lot to the door. It is obvious that a person who has stepped up from the street to the sidewalk, as plaintiff and Ms. Weldon did, would be aware that stepping back presented a danger that one would suffer a fall.

In addition, the entire basis of an invitor's liability rests upon its superior knowledge of the danger which causes the invitee's injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable. *Quillen v. Quillen*, 388 So.2d at 989.

There is no evidence that the invitor in this case possessed any superior knowledge that the sidewalk posed any danger to its invitees. The Waffle House was built before the enactment of the ADA. As noted above, there is no requirement that Waffle House comply with the ADA provisions cited by plaintiff and no evidence that it was in violation of any building codes in effect at the time of its construction. Furthermore, there is no evidence that Waffle House was aware that its sidewalk sloped slightly more than allowed under the ADA. That determination required an expert hired by plaintiff. There is no reason to conclude based on the evidence presented that defendant was aware of this issue of non-compliance. Nor is there any

evidence beyond speculation that the non-compliance contributed to Ms. Weldon's fall. There were no witnesses to her fall. Her daughter, the person closest to Ms. Weldon, testified that she did not see her fall and that her mother was already on the ground when she first observed her.

Likewise, while plaintiff's expert opined that a rail placed along the length of the sidewalk would have kept Ms. Weldon from falling, this was not the only way to make the sidewalk ADA-compliant, even assuming Mr. Tolbert is correct in his claim that a barrier of some sort was required by the ADA for the full 30 feet of sidewalk in front of the restaurant. The ADA rules were designed to keep people using the handicap ramp, *i.e.*, people in wheelchairs, from rolling off the side of the ramp and the landing. They were not designed to keep any and all pedestrians from injury resulting from falls. To that end, the ADA also would have allowed a two-inch curb to have been placed along the edge of the landing to keep people using the handicap ramp and landing from falling off the drop-off. Although this would have been ADA-compliant, it would not necessarily have kept Ms. Weldon from falling as she did. In fact, a two-inch ADA-compliant curb could contribute to falls, rather than prevent them. Nonetheless, this would have made the sidewalk ADA-compliant with respect to the edge requirements for a handicap ramp landing. Thus, even had the sidewalk

been ADA-compliant, it would not necessarily have prevented Ms. Weldon from falling or from injuring herself any less severely.

In any event, the invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is it liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care. *Sheikh v. Lakeshore Found.*, 64 So.3d 1055 (Ala.Civ.App. 2010).

Under the circumstances presented here, no reasonable person could reach any conclusion other than that the hazard presented by the step-up from the parking lot to the sidewalk was open and obvious. Therefore, defendant is not liable for the injury suffered by Ms. Weldon. Based on this, defendant's motion for summary judgment is due to be granted and this action is due to be dismissed with prejudice. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 20th day of September, 2012.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE